[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM ORDER RE: APPLICATIONS FOR COMMISSIONS TO TAKE OUT-OF-STATE DEPOSITIONS FOR USE AS EVIDENCE IN ARBITRATION PROCEEDINGS
Upon considering the written submissions and oral arguments of counsel in support of and in opposition to the fifteen (15) Applications For Commission to Take Out-of-State Deposition For Use As Evidence In Arbitration Proceeding ("Applications") which plaintiff Redding Life Care, LLC ("Redding") has brought in the above-captioned case, the Court CT Page 12408 hereby FINDS and ORDERS as follows:
 FINDINGS
General:
1. Redding filed each of its pending Applications under General Statutes § 52-412 (c), which provides as follows:
 Any party to a written agreement for arbitration may make application to the Superior Court, or, when the court is not in session, to a judge thereof, having jurisdiction as provided in subsection (b), for an order directing the taking of depositions, in the manner and for the reasons prescribed by law for taking depositions to be used in a civil action, for use as evidence in an arbitration.
To obtain relief under Section 52-412 (c), an applicant must establish:
a. that it is a party to a written arbitration agreement;
b. that it wishes to depose the person named in the application to preserve his or her testimony for use as evidence in an arbitration proceeding under that agreement; and
c. that its reasons for taking the proposed deposition are such as would justify the taking of an evidentiary deposition in a civil action.
2. Redding and Sordoni are parties to a written arbitration agreement, under which they are currently engaged in an arbitration proceeding before the American Arbitration Association in New Haven, Connecticut. The arbitration agreement is part of a written Construction Management Agreement ("CMA") between Redding, as Owner, and Sordoni, as Construction Manager, for the construction of a life care facility known as Meadow Ridge (the "Project") in Redding, Connecticut.
3. The pending arbitration, entitled In the Matter of Redding LifeCare, LLC and Sordoni Skanska Construction Co., AAA Case No. 12 1100110 99, concerns a series of disputes between Redding and Sordoni as to conduct by each which allegedly violated the contractual rights of the other under the CMA. Redding claims, before the arbitrators, that Sordoni wrongfully terminated the CMA in June 2000, stopped all work on the Project at that time, and later threatened its subcontractors and suppliers to intimidate and prevent them from returning to work on the Project following termination. Sordoni responds that the termination was CT Page 12409 fully justified by Redding's own conduct, which allegedly included: interfering with and delaying Sordoni's work on the Project; failing to timely review requests for changes and to negotiate change orders; failing to issue, process and pay change orders; failing to pay the cost of the work; failing to make payments of sums due and owing for which the Project Architect had certified payment; failing to incorporate value engineering and automatic savings into the Project; and failing and refusing to grant appropriate extensions of time.
4. The persons whom Redding seeks to depose, assertedly to preserve their testimony for use as evidence in the Redding-Sordoni arbitration, can usefully be divided into three basic groups:
a. The first group of six includes the following persons, each of whom had special responsibilities for managing, coordinating and/or performing work on the Project on behalf of a particular out-of-state subcontractor:
(1) Mr. Anthony DaCosta, Project Manager for Island Lathing Plastering, Inc. ("Island Lathing")of Holtsville, New York — a subcontractor engaged by Sordoni to provide all Spray-On Fireproofing ("SOPF")and perform all related work on the Project;
(2) Mr. Donald Trier, who coordinated work on the Project for Elmsford Sheet Metal Works, Inc. ("Elmsford") of Courtlandt Manor, New York — a sub-subcontractor that provided much of the ductwork for the Project's heating, ventilation and air conditioning ("HVAC") system;
(3) Mr. David McCabe, an estimator who performed project management duties on the Project for Crow Sutton, Associates, Inc. ("Crow Sutton") of Buskirk, New York — a subcontractor of Sordoni that furnished and installed landscaping for the Project site and the atrium of the community building;
(4) Mr. John Carlin, Lighting Manager for Turtle Hughes, Inc. ("Turtle Hughes") of Linden, New Jersey — a subcontractor retained by Sordoni to supply all lighting fixtures for the Project buildings;
(5) Ms. Michelle Wagner, Project Engineer for Unimast, Inc. ("Unimast") of McDonough, Georgia — a sub-sub-subcontractor retained by sub-subcontractor Interior Builders, Inc. ("Interior Builders") to fabricate and install the exterior light gauge metal framing for the Project; and
(6) Mr. David McDermott, Project Manager for Schenectady Steel, CT Page 12410 Inc. ("Schenectady Steel") of Schenectady, New York — a subcontractor retained by Sordoni to furnish and install all structural steel required for the community building.
b. The second group of six includes the Keepers of Records of the out-of-state subcontractors by whom the first six proposed deponents were employed when they worked on the Project. Those subcontractors, to reiterate, are: Island Lathing, Elmsford, Crow Sutton and Schenectady Steel, all of New York State; Turtle Hughes of New Jersey; and Unimast of Georgia.
c. The final group of three proposed deponents are the following persons:
(1) the Keeper of Records of Sordoni's parent corporation, Skanska (USA), Inc. ("Skanska"), of Whiteside, New York;
(2) the Keeper of Records of Sordoni's accountant, Ernst Young LLP (Ernst Young"), of New York, New York; and
(3) a Corporate Designee from Ernst Young.
5. All of Redding's fifteen proposed deponents are out-of-state residents. Because of their non-residency, they could properly be deposed in a civil action to preserve their testimony, if relevant to that action, for later use at trial.[1]
6. Against this background, the principal issue that divides these parties as to each of Redding's Applications is whether Redding's true purpose for taking the deposition therein requested is to preserve the deponent's testimony for use as evidence in the pending arbitration. Insisting that that is indeed its purpose. Redding has sought to demonstrate that each of its proposed deponents has special knowledge about and/or access to documents concerning matters in dispute before the arbitrators, and thus that all should be deposed about those matters, and be compelled to produce all relevant documents in their possession or control at their respective depositions. Sordoni responds that Redding's true purpose is not to preserve the deponents' testimony, but rather to obtain broad discovery not permitted by the arbitrators, and otherwise to disrupt, and ultimately to undermine, the arbitration. It argues, interalia: that the deponents' proposed testimony would merely be cumulative of that of other witnesses; that many of the documents sought from each deponent do not relate to the only matters about which the deponent has personal knowledge, and thus about which he or she can competently testify in the arbitration; and that the sheer number and timing of the proposed depositions — eighteen (18) in total,[2] all to be conducted in CT Page 12411 the middle of Sordoni's case-in-chief before the arbitrators — suggests the purpose of frustrating Sordoni's right to a fair, efficient arbitration proceeding.
Proposed Depositions of Subcontractors' Representatives
7. For the following reasons, the Court agrees with Redding that its first six proposed deponents — Messrs. Anthony DaCosta, Donald Trier, David McCabe, John Carlin, and David McDermott and Ms. Michelle Wagner — all have special knowledge of matters in dispute before the arbitrators, and thus should be deposed to preserve their relevant testimony for use as evidence in the arbitration:
a. In the arbitration, Sordoni claims, inter alia, that its work on the Project was delayed, and that it incurred added costs, due to Redding's frequent changes in the design of Project buildings. It claims, in particular, that such delays and added costs resulted from changes in classification of the residential buildings from type 2B to 2A to 2B construction. These changes in classification, claims Sordoni, had adverse impacts on the costs and scheduling of work for many of its subcontractors, including those responsible for damper work, shaft work, piping, sprinklers, plumbing, work on the walls and roof assembly, steel work and installation of the SOPF.
b. Island Lathing monitored and assessed the impact of all changes in residential building classification on the costs and scheduling of its SOPF work through its Project Manager, Anthony DaCosta. Mr. DaCosta was regularly at the jobsite, where he dealt personally with schedules, change orders and alleged deficiencies associated with the application of the SOPF. He thus has special knowledge of matters in dispute before the arbitrators, and should be deposed, because of his non-residency, to preserve his relevant testimony for use as evidence in the arbitration.
c. Elmsford monitored and assessed the impact of all changes in residential building classification on the costs and scheduling of its HVAC ductwork on the Project, including shaft work and damper work, through its jobsite work coordinator, Donald Trier. Mr. Trier has first-hand knowledge of matters in dispute before the arbitrators, and thus should be deposed, because of his non-residency, to preserve his relevant testimony for use as evidence in the arbitration.
d. Schenectady Steel, as previously noted, was engaged by Sordoni to furnish and install all structural steel required for the community building. David McDermott, as Project Manager for Schenectady Steel, gridded the community building and was personally responsible for all shop drawings. Mr. McDermott, claims Redding, did not allow steel to be CT Page 12412 fabricated until shop drawings were approved. Sordoni and the Project Architect coordinated shop drawing reviews with Mr. McDermott.
e. Prior to Sordoni's June 2000 termination of the CMA, Schenectady Steel allegedly experienced delays in performing steel work called for under its subcontract. At times, claims Redding, its shop drawings were incomplete; at other times, the sub-subcontractors it engaged to erect the structural steel ceased operations or underperformed. Schenectady Steel also performed certain tasks called for by its subcontract in a different sequence than that specified in the subcontract. Redding claims that these delays and out-of-sequence operations resulted from Sordoni's failure to supervise and coordinate the work of its subcontractors, not from design changes or other problems caused by Redding, as Sordoni has alleged. Because Mr. McDermott has first-hand information concerning these problems, all of which are in dispute before the arbitrators, his relevant testimony on those issues should be preserved by deposition for use as evidence in the arbitration.
f. Several issues in dispute in the arbitration pertain to the work of Crow Sutton, the subcontractor originally retained by Sordoni to furnish and install all landscaping for the Project site and the atrium of the community building, and later employed by Redding, following termination of the CMA by Sordoni, to perform remedial work on the Project. They include:
(1) Redding's alleged refusal to pay Crow Sutton for added costs it incurred in storing materials for the Project, including trees and shrubbery, seed, landscape accessories, benches and fencing, during periods of delay allegedly caused by Redding's changes in Project design;
(2) Redding's alleged failure to grant an appropriate extension of contract time for Crow Sutton to do its work on a revised planting schedule due to construction delays allegedly caused by Redding;
(3) Redding's alleged failure to incorporate value engineering into the Project, including several cost-saving items falling within Crow Sutton's subcontract; and
(4) the costs of post-termination remedial work performed by Crow Sutton on behalf of Redding, which are part of Redding's claim for damages against Sordoni.
g. Crow Sutton's estimator for the Project was David McCabe. He was regularly at the jobsite, performing project management duties for Crow Sutton, and thus was personally involved with the planning and scheduling of Crow Sutton's work. He thereby acquired first-hand knowledge both of CT Page 12413 the reasons why Crow Sutton experienced delays in performing work called for under its subcontract and of all costs incurred by Crow Sutton as a result of such delays. Furthermore, he can testify as to whether, and if so when, value engineering was incorporated into the Project and how, if at all, the timing of its incorporation affected his principal's planting schedule. Because he has such relevant knowledge, Mr. McCabe may properly be deposed to preserve his testimony for use as evidence in the arbitration.
h. Turtle Hughes, the subcontractor engaged to supply all lighting fixtures for the Project's two residence buildings, community building and grounds, dealt with Redding and Sordoni concerning the Project through its Lighting Manager, John Carlin. Mr. Carlin is sought to be deposed for two purposes: first, to establish when and in what quantities lighting fixtures for the Project were actually ordered by Sordoni and/or its main electrical subcontractor, Kennedy Electrical Contractors, Inc. ("Kennedy"); and second, to determine if and when value engineering concerning Project lighting was incorporated into the Project. Information as to the former is claimed by Redding to be relevant to Sordoni's claim that Redding delayed its work on the Project and, by so doing, caused it to incur added costs. A proven failure by Sordoni to order a sufficient quantity of suitable lighting fixtures in a timely manner would assertedly undermine Sordoni's claim that Redding delayed it and its subcontractors in completing work on the agreed-upon schedule. The latter deals directly with overall Project cost and Sordoni's claim that Redding failed to incorporate value engineering into the Project. The Court is persuaded that Mr. Carlin's personal knowledge of these matters warrants the preservation of his testimony by deposition for use as evidence in the arbitration.
i. Finally, the Court agrees with Redding that Michelle Wagner of Unimast has relevant knowledge that should be preserved by deposition for use as evidence in the Redding-Sordoni arbitration. Redding claims that while Unimast worked on the Project, it had recurring problems getting its shop drawings approved by the Project Architect. One result of this problem, claims Redding, is that work on other parts of the Project were delayed, and added costs were incurred.
j. Redding also alleges that Sordoni sometimes proceeded with construction even before Unimast's shop drawings were approved. Such conduct, it contends, required the opening of walls for inspections and resulted in the issuance of deficiency reports. The follow-on contractor hired by Redding to complete the Project after Sordoni's termination of the CMA has allegedly been required to perform remedial work to correct defective installation and address the deficiency reports. CT Page 12414
k. Michelle Wagner, as Unimast's Project Engineer, was involved in all aspects of Unimast's delayed and allegedly defective work. Furthermore, she personally traveled to the Project to review alleged deficiencies. Her testimony on these matters should be preserved by deposition for use as evidence in the arbitration.
Requests for Production of Documents By Subcontractors' Representativesand Keepers of Records
8. Notwithstanding its conclusion that each of Redding's first six proposed deponents should be deposed, the Court finds that certain of Redding's identical requests for the production of documents at their respective depositions,[3] and its parallel requests for production of the very same documents by the Keepers of Records of their respective employers, are overbroad and unjustified for their only proper purpose — that of preserving testimony for later use as evidence in the arbitration. The Court therefore concludes as follows that such requests should be disallowed except as specified in this Memorandum Order:
a. To begin with, each such request for production is overbroad and unjustified because it asks for the production of privileged documents, such as communications to and from attorneys, and negotiation documents, to which the arbitrators have already denied Redding access. Any order that a deponent produce documents for use at his Section 52-412 (c) deposition must obviously exclude all privileged and negotiation documents from its scope.
b. Paragraphs 1, 3, 5, 6 and 8 of each of Redding's identical requests for production, moreover, are far broader than any evidence-preservation justification thus far advanced for the deposition of any witness to whom they are addressed. Absent any effort to limit the scope of such requests for documents, both in time and in substance, to the expected scope of the proposed deponent's testimony, they can only be understood as requests for general discovery, which is not permissible under Section 52-412 (c). See generally, McKenna v. Shearson LehmanHutton, Inc., 25 Conn. App. 126, 128 (1991). Thus, those paragraphs of each request for production must be denied as to each proposed deponent, without prejudice to their resubmission, separately as to each deponent, in a form that is properly tailored, in time and in substance, to the deponent's expected testimony.
c. Finally, in light of the particular justifications advanced for the taking of the depositions here requested, the Court concludes that only the following paragraphs of Redding's remaining requests for production should be approved, for they alone seek documents or classes of documents that relate directly to the deponents' expected testimony: CT Page 12415
 (1) As to Anthony DaCosta and the Keeper of Records of subcontractor Island Lathing: ¶¶ 2, 4, 7 and 9;
 (2) As to Donald Trier and the Keeper of Records of subcontractor Elmsford: ¶¶ 2, 4, 7 and 9;
 (3) As to David McDermott and the Keeper of Records of subcontractor Schenectady Steel: ¶¶ 2, 4, 7 and 9;
 (4) As to David McCabe and the Keeper of Records of subcontractor Crow Sutton: ¶¶ 2, 4, 7 and 9;
 (5) As to John Carlin and the Keeper of Records of subcontractor Turtle Hughes: ¶¶ 4 and 7;
 (6) As to Michelle Wagner and the Keeper of Records of subcontractor Unimast: ¶¶ 4, 7, 9 and 10.
Proposed Depositions of Keepers of Records of Skanska and Ernst Young and Corporate Designee of Ernst Young
9. Redding's stated justification for taking an evidentiary deposition of the Keeper of Records of Skanska, Sordoni's corporate parent, is unpersuasive. In its Application, Redding claims that such a deposition is necessary to preserve and identify all Project-related documents in Skanska's possession or control because those documents are admissible in evidence in the Redding-Sordoni arbitration. Skanska, it claims, acquired the documents after executing written Guarantees of Sordoni's duties and obligations under the CMA. Having assigned a Senior Vice President, Michael J. Healy, to oversee the Project, Skanska, through Mr. Healy, allegedly received copies of many communications between Redding and Sordoni, including Redding's notices of default to Sordoni, notice of termination of the CMA, and notices of intent to take assignment of subcontracts.
10. Also acting through Mr. Healy, Skanska is claimed to have addressed Project cashflow issues directly with Sordoni and to have corresponded directly with Redding on such matters as Redding's failure to pay Sordoni according to the terms of the CMA, Redding's refusals to grant extensions of contract time to Sordoni and its subcontractors, and related impacts on the Project schedule and budget.
11. Against this background, Skanska clearly had a strong interest in CT Page 12416 promoting the timely, cost-effective construction of the Project, as required by the CMA. Because of that interest, it must certainly have kept track, through Mr. Healy, of Sordoni's costs and scheduling problems on the Project as the work progressed. Even so, for the following reasons, Skanska's documents, as described by Redding, need not be preserved for use as evidence in the arbitration by requiring their production at an evidentiary deposition of its Keeper of Records:
a. First, of course, Skanska is not a party to the arbitration. Neither its role and responsibilities as Guarantor of Sordoni's duties and obligations under the CMA nor its monitoring of progress on the Project is at issue in the arbitration. As a result, the only potential evidentiary value of any of Skanska's Project-related documents is to show what others may have known and done on the Project in the relevant time frame.
b. Secondly, almost all of Skanska's Project-related documents are merely copies of communications between Redding and Sordoni, to which Redding already has access, either in its own files or in files of Sordoni which have been disclosed to it in discovery.
c. Thirdly, as for any remaining Project-related documents which Skanska itself may have authored and sent only to Sordoni, Redding has given this Court no basis for believing that any such document would be admissible in evidence in the Redding-Sordoni arbitration. Instead, it appears that each such document would be inadmissible hearsay, for all are based upon reports or observations of third parties, notably Redding and Sordoni agents or employees, not upon the first-hand observations of Skanska's own agents or employees. Accordingly, there is simply no reason on this record for taking an evidentiary deposition of Skanska's Keeper of Records.
12. Redding's stated justifications for deposing the Keeper of Records and the Corporate Designee of Ernst Young, Sordoni's accountant, are unconvincing as well. The focus of each such deposition, as Redding has proposed it, would be to preserve all documents possessed or controlled by Ernst Young concerning Project finances. Such documents, insists Redding, are directly relevant to Sordoni's claims of damages against it.
13. If the documents in question are in fact related to Sordoni's claim of damages against Redding, that fact will be established when Sordoni presents or describes that claim before the arbitrators. Then, of course, it will be Sordoni's obligation to present all documents bearing on that issue, or to make them available to Redding for use as evidence to test that claim. Until then, however, such production is premature, and must CT Page 12417 be denied as an undisguised effort to gain general discovery, which is not permitted under Section 52-412 (c).
 ORDERS
For the foregoing reasons, the Court hereby ORDERS
I. That Redding's Applications to take evidentiary depositions of Anthony DaCosta, Donald Trier, David McDermott, David McCabe, John Carlin and Michelle Wagner are hereby GRANTED, but the obligations of such deponents to produce documents at their respective depositions are strictly limited in accordance with the FINDINGS set forth in Paragraph 8 of this Memorandum Order, supra at pages 13-16;
II. That Redding's Applications to take evidentiary depositions of the Keepers of Records of subcontractors Island Lathing, Elmsford, Schenectady Steel, Crow Sutton, Turtle Hughes and Unimast are herebyGRANTED, but the obligations of such deponents to produce documents at their respective depositions are strictly limited in accordance with theFINDINGS set forth in Paragraph 8 of this Memorandum Order, supra at pages 13-16; and
III. That if, instead of conducting any or all of the limited evidentiary depositions permitted by this Memorandum Order, Redding desires to have any of its deponents produce more documents at his or her deposition than this Court has approved herein, Redding shall file and serve upon opposing counsel, not later than September 18, 2001, a separate request for each such deponent, identifying with particularity each additional document sought to be produced by that deponent, and giving specific reasons why production of that document is necessary to preserve the deponent's testimony for use as evidence in the arbitration.
IV. That Redding's Applications to take evidentiary depositions of the Keepers of Records of Skanska and Ernst Young, and of the Corporate Designee of Ernst Young, are hereby DENIED.
IT IS SO ORDERED this 4th day of September, 2001.
Michael R. Sheldon Judge of the Superior Court